IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>U.S. Department of Justice, Tax Division<br>P.O. Box 227<br>Washington, D.C. 20044<br><br>                Petitioner,<br><br>v.<br><br>PHILIP D. BERLIN<br>                Respondent. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: Misc. Case No. 06-170<br>:<br>: Judge:    Hon. Thomas F. Hogan<br>:<br>: |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNITED STATES' MOTION FOR AN ADJUDICATION OF CONTEMPT
<u>OF RESPONDENT AND FOR INCARCERATION OR FINE</u>


                                              Respectfully submitted,

                                              CHARLES M. FLESCH
                                              Trial Attorney, Tax Division
                                              U.S. Department of Justice
                                              P.O. Box 227
                                              Ben Franklin Station
                                              Washington, D.C.  20044
                                              Telephone:  (202) 307-6635

OF COUNSEL:

KENNETH L. WAINSTEIN
United States Attorney

TABLE OF CONTENTS

STATEMENT & ARGUMENT ------------------------------------------ 2

I.  Introduction ---------------------------------------------------- 2

    A.  The July 20, 2006 Argument and Enforcement Order---- 2

    B.  Berlin's Limited Document Production-------------------- 4

II.  Respondent Should Be Adjudged in Contempt--------------------- 5

    A.  Jurisdiction for This Contempt Proceeding------------------ 5

    B.  The Meaning and Effect of the July 20, 2006 Order--------- 5

    C.  The Meaning of "Possession, Custody, or Control"-------- 6

    D.  Respondent May Not Properly Redact Information on the Eight
        Statements Produced, He Waived Any Objections to Production
        of All the Documents, His Counsel's Statements Are Binding, and
        the Doctrine of Collateral Estoppel Applies----------------------------- 7

        1.  Voluntarily Prepared Bank or Business Records Are Not Privileged- 7

        2.  Berlin Waived Any Privilege As to the Eight Credit Card Statements
            and Other Documents-------------------------------------------- 9

        3.  Counsel's Statements Are Binding on Berlin-------------------- 12

        4.  The Doctrine of Collateral Estoppel Applies---------------------- 13

    E.  A Finding of Contempt Is Appropriate-------------------------------- 13

III.  The United States Seeks Berlin's Incarceration------------------------------ 15

CONCLUSION ---------------------------------------------------------------------- 18

On July 20, 2006, the Court issued an order enforcing two Internal Revenue summonses that were previously served on respondent Philip D. Berlin, requiring Berlin's testimony and production of documents identified in the summonses. The Internal Revenue Service and Berlin have agreed to have Berlin appear to answer questions on September 19, 2006. However, Berlin, through his counsel, produced only eight *redacted* copies of the MasterCard credit card statements from 2002, and a copy of the expired passport. The redactions were made, ostensibly, under the Fifth Amendment notwithstanding that the Court overruled the Fifth Amendment act of production objection and that Berlin's counsel stated that no Fifth Amendment objection was being asserted as to the statements. Berlin still refuses to produce unredacted copies of the eight statements even after being apprised of the existence of binding Supreme Court precedent that holds that the *contents* of bank records are not privileged under the Fifth Amendment,[1] and after being reminded that Berlin's counsel stated at oral argument that Berlin was not asserting any Fifth Amendment objection as to the production of the records. Berlin also refuses to produce the balance of the records sought as ordered by the Court.

For the reasons set forth below, Berlin should be adjudged in contempt, and incarcerated or fined until such time as he complies with the Court's order to produce the summonsed records.

---

[1] *See Doe v. United States*, 487 U.S. 201, 206 (1988) ("It is undisputed that the contents of the foreign bank records sought by the Government are not privileged under the Fifth Amendment.") (citing *Braswell v. United States*, 487 U.S. 99, 108-110 (1988); *United States v. Doe*, 465 U.S. 605 (1984); *Fisher v. United States*, 425 U.S. 391 (1976)).

STATEMENT & ARGUMENT

I. Introduction.

    A. The July 20, 2006 Argument and Enforcement Order.

The United States commenced this proceeding to enforce two Internal Revenue summonses directed to respondent Philip Berlin for his testimony and to obtain his MasterCard credit card, the statements relating thereto, records that reflect payment of charges to that card, and copies of his expired passports in connection with the Internal Revenue Service's examination of respondent's 2000-2002 tax years. (*See* Docket No.1, Petition; Barker Decl. & Exs. 2, 3.) In his opposition to enforcement of the summonses, respondent argued, among other things, that (1) the Fifth Amendment privilege bars production of the credit card and other documents sought, and (2) the Fifth Amendment privilege bars him from providing any testimony. In his declaration, respondent asserted a blanket Fifth Amendment privilege objection to producing the documents and providing testimony. In addition, Berlin identified some documents that were responsive (*e.g.*, seven credit card statements from 2002 and a copy of his expired passport), but was otherwise silent as to the whereabouts of his MasterCard credit card, and the other documents sought. (*See* Berlin Decl.)

On July 20, 2006, the Court heard argument. The United States argued that there was no valid Fifth Amendment objection to production of the summonsed records citing among other cases, *Fisher v. United States*, 426 U.S. 391, 408 (1976); *United States v. Gippetti*, 153 Fed. Appx. 865, 868-869, 2005 WL 2980594 (3d Cir. 2005); *United States v. Norwood*, 420 F.3d 888 (8th Cir. 2005). (*See* Docket 8, U.S. Reply Brief at 10-14; 7/20/06 Tr. 9, 12-15.) The United States further argued that Berlin did not satisfy his burden of proof on the issue of lack of

2

possession, custody or control of the credit card, the missing credit card statements for 2000, 2001 and part of 2002, and payment records and that the Fifth Amendment privilege in any event was no substitute for evidence on an issue which respondent bears the burden of proof. (*See* U.S. Reply Brief at 10-14); 7/20/06 Tr. at 9-11.)

At the July 20th argument, counsel for Berlin, Michael Durney, clarified that there were eight (and not seven) credit card statements from 2002, and that Berlin was "not asserting any Fifth Amendment rights as to the disclosure of those records." (7/20/06 Tr. at 3-4, 16-17). Further, Durney represented that Berlin was "not asserting [the] Fifth Amendment as to the existence of other records [sought by the summonses]." (7/20/06 Tr. at 17.)

The Court expressly overruled Berlin's Fifth Amendment act of production objection as to the documents sought and found the summonses enforceable. (7/20/06 Tr. at 18-20.) Also, counsel for the United States submitted a proposed written order that contained five proposed findings of fact, including that "(5)  BERLIN has possession, custody and/or control of the MasterCard credit card and the other documents identified on the summonses." (*See id.* at 20). After reviewing the proposed order and in response to the Court's query whether respondent wanted to respond to it, Durney replied, "We have no objection to the order as presented." (*Id.* at 21.)

In the afternoon of July 20, 2006, the Court issued an order that contained the same five findings of fact that the United States had proposed, and to which respondent expressly acquiesced, including that "Respondent has possession, custody and/or control over the MasterCard credit card and other documents identified on the summonses." (Docket 12, 7/20/06

3

Order at 1.) The Court directed respondent to appear before Agent Barker and produce the record sought by the summonses except for a copy of his current passport. (Id.)[2]

B. <u>Berlin's Limited Document Production.</u>

Immediately following the July 20, 2006 hearing, Berlin (through his counsel Michael Durney) produced eight redacted copies of the MasterCard credit card statements from 2002 and a copy of Berlin's expired passport. (*See* Flesch Decl.) Although Durney was apprised that redacting the documents was improper, he agreed to provide a privilege log identifying what was redacted on the statements and the reasons for the redactions. That agreement was memorialized in a letter dated July 20, 2006. (*See* Flesch Decl., Ex. 1.) The United States demanded the balance of the records sought by the summonses. (*Id*.)

By letter dated July 24, 2006 (Flesch Decl., Ex. 2), Durney produced the privilege log with another copy of the redacted statements. The privilege log reveals that the redactions were the name of the bank and references to account and/or code numbers. (*Id.*) The log failed to identify the basis for the redactions. (*See id.*)

By letter dated July 25, 2006 (Flesch Decl. Ex. 3), Durney was provided with specific Supreme Court citations holding that the contents of the eight statements were not privileged, and was told that if unredacted copies were not produced, along with the other summonsed documents, a motion for contempt would be forthcoming. In response, Durney wrote to advise that Berlin may redact the contents of the bank records and that all documents allegedly have been produced. (*See* Flesch Decl., Ex. 4, Durney 8/1/06 letter.)

---

[2]At Berlin's request, Berlin will appear to answer questions on September 19, 2006.

4

On August 1, 2006, undersigned counsel tried one last time to obtain compliance with the Court's order by telephoning opposing counsel and reading his own statements to him from the July 20, 2006 oral argument. Respondent chose to adhere to his position. (Flesch Decl.)

II. Respondent Should Be Adjudged in Contempt.

    A. Jurisdiction for This Contempt Proceeding.

This proceeding is brought to adjudicate respondent in contempt for refusing to obey the Court's July 20, 2006 order enforcing the Internal Revenue Service summonses with respect to the summonsed documents. The Court has subject matter jurisdiction pursuant to 26 U.S.C. §§ 7402(a), 7402(b), 7604(b), and 28 U.S.C. §§ 1340 and 1345.

    B. The Meaning and Effect of the July 20, 2006 Order.

The Court's July 20, 2006 order directing Berlin to produce the summonsed records is a final and appealable order. *See Reisman v. Caplin*, 375 U.S. 440, 449 (1964); *United States v. Huckaby*, 776 F.2d 564, 566 n.2 (5th Cir. 1985).

The Court's July 22, 2006 order also established the validity of the IRS summonses under *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *United States v. Millstone Enterprises, Inc.*, 864 F.2d 21, 23 (3d Cir. 1988).

The July 20, 2006 order contained an express finding that Berlin has possession, custody and/or control of the records sought by the summonses. Accordingly, the Court's July 20, 2006 enforcement order bars Berlin, under the principle of collateral estoppel, from relitigating his possession and control of the summonsed documents. *See United States v. Rylander*, 460 U.S. 752, 756-57 (1983); *United States v. Millstone Enterprises, Inc.*, 864 F.2d at 23; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988) (court's enforcement order is *res judicata* on the

issue of possession of the summonsed documents); *see also United States v. Sorrells*, 877 F.2d 346, 348-349 (5th Cir. 1989) (defense of lack of possession or control of the documents not available in contempt proceeding for violation of order enforcing IRS summons).

Moreover, the July 20th enforcement order carries with it a presumption of Berlin's *continuing* possession, custody or control of the summonsed documents. *See United States v. Rylander,* 460 U.S. at 760-761 (citing *Maggio v. Zeitz*, 333 U.S. 56 (1948)); *accord United States v. Sorrells*, 877 F.2d at 348; *United States v. Roberts,* 858 F.2d at 701.

C. The Meaning of "Possession, Custody, or Control."

In its July 20, 2006 order, the Court expressly found that Berlin has possession, custody and/or control of the summonsed documents. (Docket No. 12.) Indeed, Berlin did not and could not reasonably argue that "banks ... generate and, indeed, send to their customers monthly statements and the like and d[id] not argue that, [in 2000 through 2002], he did not, in fact, receive those [credit card] statements and some or all of the other records sought by the government." *United States v. Gippetti*, 153 Fed. Appx. at 867.

Assuming *arguendo* that if Berlin lacks physical possession of most of the summonsed records, he still has custody or control of them because he is the owner of his credit card and bank accounts, and can retrieve such documents from the financial institution. *Cf. Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160-161 (3d Cir. 2004) ("so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control" (citing Fed. R Civ. P. Rule 34(a)); *United States v. Int'l Union of Petroleum and Indus. Workers,* 870 F.2d 1450, 1452 (9th Cir. 1989); *Alexander v. FBI*, 194 F.R.D. 299, 301 (D.D.C. 2000).

Respondent's MasterCard credit card, his credit card statements and bank records are the types of records that he should have in his physical possession. Alternatively, respondent's statements of the credit card account and other bank records should be obtainable by him from a bank. In any event, courts have found taxpayers in contempt when they have not used all reasonable efforts to obtain their records from offshore banks. *See, e.g., United States v. Hall*, 2003 WL 23239979 (M.D. Fla. 2003), *report & rec. adopted*, 2003 WL 23241703 (M.D. Fla. 2003); *see also United States v. Plath*, 2003 WL 23138778 (S.D. Fla. 2003) (Taxpayer who had obtained MasterCard credit card through offshore bank, Leadenhall Trust Co., Bahamas, and who failed to produce any statements for his foreign bank account and credit card, was held in contempt of an order enforcing an IRS summons where he "failed to use any efforts to contact [the offshore bank] to obtain the necessary documentation.").

Accordingly, Berlin must produce the summonsed records even if he has to contact his bank and obtain duplicate copies of them. *See Hall, supra; Plath, supra.*

> D. Respondent May Not Properly Redact Information on the Eight Statements Produced, He Waived Any Objections to Production of All the Documents, His Counsel's <u>Statements Are Binding, and the Doctrine of Collateral Estoppel Applies</u>.

Despite the Court's July 20, 2006 order, respondent has produced eight redacted credit card statements pertaining to his MasterCard credit card. He improperly redacted the name of the bank and code or account number information. And respondent has produced no other documents. This is contumacious conduct.

> 1. <u>Voluntarily Prepared Bank or Business Records Are Not Privileged.</u>

Leaving aside for the moment the representation by respondent's counsel that Berlin was "not asserting any Fifth Amendment rights as to the disclosure" of the eight credit card

statements, (7/20/06 Tr. at 3-4, 16-17), once the Fifth Amendment act of production objection was overruled by the Court—as it was,— respondent was required to produce complete and unredacted copies of the documents. *See Doe v. United States*, 487 U.S. 201, 206 (1988) ("It is undisputed that the contents of the foreign bank records sought by the Government are not privileged under the Fifth Amendment.") (citing *Braswell v. United States*, 487 U.S. 99, 108-110 (1988); *United States v. Doe*, 465 U.S. 605 (1984); *Fisher v. United States*, 425 U.S. 391 (1976)); *see also United States v. Hubbell*, 530 U.S. 27, 35-36 (2000) (It is a "settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the [Fifth Amendment] privilege. *** It is clear, therefore, that respondent ... could not avoid compliance with the subpoena served on him merely because the demanded documents contained incriminating evidence, whether written by others or voluntarily prepared by himself."); *accord United States v. Ponds*, __ F.3d __, 2006 WL 1970202 at * 3 (D.C. Cir. 7/14/06) (quoting same passage from *Hubbell, supra*).

     In his August 1, 2006 letter, Berlin (through counsel) cited *United States v. Norwood, supra,* for authority that permits redaction of information contained on the credit card statements. But nothing in *Norwood* or in the Supreme Court jurisprudence cited above stands for such a proposition. Indeed, the act of production prong of the Fifth Amendment privilege focuses on the existence of the records and the Government's knowledge that the documents exist, not the Government's knowledge of the contents of such records. *See United States v. Ponds*, 2006 WL 1970202 at * 1, 4, 5 (D.C. Cir.); *see also Fisher v. United States*, 425 U.S. at 411 ("The existence and location of the papers are a foregone conclusion ...."); *United States v. Norwood,*

420 F.3d at 895; *United States v. Teeple*, 286 F.3d 1047, 1050-1051 (8th Cir. 2002). We can find no case that permits the cherry picking and redaction of documents by an individual whose Fifth Amendment act of production privilege objection was either overruled or not asserted at all.

Given the foregoing, Berlin may not properly redact copies of the credit card statements.

2. Berlin Waived Any Privilege As to the Eight Credit Card Statements and Other Documents.

In his declaration (docket No. 6), Berlin did not specifically assert the Fifth Amendment privilege as to producing the credit card statements. Rather, he interposed a blanket Fifth Amendment objection. (Berlin Decl. ¶ 4(a) (identifying the documents); ¶ 8 (blanket Fifth Amendment objection "with respect to all documentary and testimonial information.") Berlin's failure to assert the Fifth Amendment objection as to producing the summonsed records on a document-by-document basis plus his testimony waived the privilege.

As a general rule, the Fifth Amendment privilege must be asserted on a document-by-document basis.[3] And if not asserted, the privilege is waived. *See Manness v. Meyers*, 419 U.S. 449, 466 (1975); *see also Garner v. United States*, 424 U.S. 648, 654 n.8 (1976) (A witness may lose the privilege by failing to claim it promptly "even though the information being sought remains undisclosed when the privilege is claimed."); *Rogers v. United States*, 340 U.S. 367, 440 (1951) (The Fifth Amendment privilege "'is deemed waived unless invoked.'").

Moreover, testimony by a witness, whether it be during a hearing or through an affidavit, has consequences as well.

---

[3] The blanket or general assertion of a Fifth Amendment privilege to resist enforcement of a summons was insufficient as a matter of law. *See United States v. Allshouse*, 622 F.2d 53, 56 (3d Cir. 1980). This Court so ruled. (*See* 7/20/06 Tr. at 19.)

> "The Fifth Amendment privilege is waived for matters to which
> the witness testifies. *Mitchell v. United States*, 526 U.S. 314, 321 (1999)
> \*\*\* A witness may waive his Fifth Amendment privilege as to any
> matters addressed by the witness in an affidavit to the Court.
> *Nutramax Labs., Inc. v. Twin Labs.,* 32 F.Supp.2d 331, 334 [D. Md. 1999]
> An affidavit operates like any other testimonial statement. *Id.* at
> 334.
>
> Additionally, if the privilege is waived as to testimonial admissions,
> it is waived as to documentary admissions on the same subject matter.
> *In re Donald Sheldon & Co., Inc.*, 93 F.Supp.2d 503, 505 (S.D.N.Y. 2000).
> Where a witness provides statements as to his finances in papers
> submitted to the court, he is deemed to have waived his Fifth Amendment
> privilege on the same subject matter. *Id.*

*See United States v. Gwinn*, 2003 WL 23357667 at \* 6 (M.D. Fla. 2003) (citation omitted).

Furthermore, it is well-settled that where, as here, a witness testifies and discloses a fact, the witness may not properly invoke the Fifth Amendment privilege in refusing to answer questions about the details concerning the fact. *Rogers v. United States*, 340 U.S. at 373;[4] *Mitchell v. United States*, 526 U.S. at 321. "The privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination.' \*\*\* The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry." *Mitchell*, 526 U.S. at 321 (citation omitted). The rationale for this principle is that a witness who testifies to a fact, but who refuses to testify as to details

---

[4]In *Rogers, supra*, the witness had been subpoenaed by a grand jury. The witness testified that she had been a member of the communist party and had at one time certain books and records pertaining thereto. The witness then denied that she had possession of the organization's books and records sought, because she turned them over to another person. When asked for the name of the person who had possession of the records, the witness interposed her Fifth Amendment privilege. The Supreme Court affirmed an order of contempt, because the witness had waived her Fifth Amendment privilege by testifying.

concerning the fact on cross-examination by invoking his Fifth Amendment privilege, distorts the truth-finding process. *See also Brown v. United States*, 356 U.S. 148, 155-157 (1958).[5]

In his declaration, Berlin admitted the existence and location of the eight credit card statements. (*See* Berlin Decl. ¶ 4(a)). He therefore waived any Fifth Amendment objection under the foregoing authorities.[6] Furthermore, in his declaration, Berlin conclusorily asserted that he did not have any other documents. That testimony likewise waived any Fifth Amendment privilege.[7]

---

[5] As stated by the Supreme Court in *Mitchell, supra*, "[a] witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry. As noted in *Rogers*, a contrary rule 'would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony,' 340 U.S., at 371, 71 S.Ct. 438. It would, as we said in *Brown*, 'make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell,' 356 U.S., at 156, 78 S.Ct. 622. The illogic of allowing a witness to offer only self-selected testimony should be obvious even to the witness, so there is no unfairness in allowing cross-examination when testimony is given without invoking the privilege." *Mitchell,* 526 U.S. at 322.

[6] *Cf. United States v. Teeple*, 286 F.3d 1047 (taxpayer admitted to having possessed the documents requested in the summons and overruling taxpayer's Fifth Amendment act of production privilege objection) (citing *Fisher v. United States, supra*).

[7] The Court obviously did not credit Berlin's uncrossed testimony in his declaration as sustaining his separate burden of proof on the issue of possession, custody or control of the summonsed documents. *See* 7/20/06 Order, finding No. 5; *see also United States v. Rylander*, 460 U.S. 752, 757 (1983); *accord United States v. Huckaby,* 776 F.2d 564, 567, 568 (5th Cir. 1985); *United States v. Brunet*, 5 Fed. Appx. 445, 2001 WL 223875 at * 2 (6th Cir. 2001) ("lack of possession of documents is a defense" to an IRS summons) (citations omitted). Accordingly, it was respondent who bore the burden of proof to support that defense. *See United States v. Gippetti*, 153 Fed. Appx. at 867, 868; *United States v. Huckaby*, 776 F.2d at 567 (party opposing enforcement of summons who raised lack of possession bears burden of "producing credible evidence that he does not possess or control the documents sought."); *see also United States v. Lawn Builders of New England, Inc.*, 856 F.2d 388, 392 (1st Cir. 1988); *United States v. Antonio J. Sancetta, M.D.,P.C.,* 788 F.2d 67, 72 (2d Cir. 1986) (respondent failed to meet *his* burden of proving that the summonsed documents did not exist or that he did not possess them).
In this case, Berlin admitted what he physically possessed of the documents, but stayed silent about the location of his credit card and other documents. This was insufficient as a matter

### 3. Counsel's Statements Are Binding on Berlin.

Berlin's counsel appeared for him at the July 20, 2006 oral argument, and represented that Berlin was not asserting the Fifth Amendment objection to the eight credit card statements or any other documents sought by the summonses. (7/20/06 Tr. at 3-4, 16-17.)  Moreover, Berlin's counsel did not object to the proposed order containing express factual findings adopted by the Court despite being afforded notice and an opportunity to do so. (*Id.* at 21.)

The representations of Berlin's counsel are binding on Berlin.  *See Laird v. Air Carrier Engine Service, Inc.*, 263 F.2d 948 (5th Cir. 1959) ("An attorney has wide authority in the conduct of litigation. He is chosen to speak for the client in Court. When he speaks in Court, whether it be on a formal trial or in an informal pretrial, he speaks for and as the client. Those statements or agreements which dispense with proof of facts are made with respect to the impending trial and until withdrawn are not merely evidence as in the case of an ordinary admission. They are absolutely binding. As long as they stand, they foreclose the matter altogether."); *United States v. Bentson,* 947 F.2d 1353, 1356 (9th Cir. 1991) (attorney's statement during closing argument as to what defendant was not claiming was a judicial admission that was binding on client) (citing *United States v. Wilmer*, 799 F.2d 495, 502 (9th Cir.1986) (attorney's statement during oral argument constituted judicial admission), *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987)); *cf. Purgess v. Sharrock,* 33 F.3d 134, 144 (2d Cir. 1994) ("'[S]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.'") (citations omitted).

---

of law as was further argued at the July 20, 2006 argument.  (*See* 7/20/06 Tr. at 10-11.)

Similarly, Berlin's failure to object to the proposed order containing the finding of possession, custody or control of the summonsed documents, which the Court adopted and incorporated into its July 20th enforcement order, is itself a waiver. *Cf. Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116 (3d Cir. 1992) ("[A] party who fails to object to errors or to raise issues at trial waives the right to complain on appeal. This requirement is imposed so that courts have an opportunity to avoid errors, thus obviating an appeal." (citing Wright & Miller, 9 Federal Practice & Procedure, § 2472 at 454 (1971)).

    4. The Doctrine of Collateral Estoppel Applies.

Finally, the Court overruled Berlin's Fifth Amendment objection as to producing the summonsed documents. The Court entered an order enforcing the summonses. Under the principle of collateral estoppel, and the cases cited previously, Berlin has no basis for refusing to produce all of the summonsed documents, including those that he improperly redacted.[8]

    E. A Finding of Contempt Is Appropriate.

Given Berlin's failure to produce the summonsed records, the Court ought to adjudge him in civil contempt for disobeying the July 20, 2006 order. "Civil contempt is 'a remedial sanction designed to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance." *LeShawn A. v. Kelly*, 887 F. Supp. 297, 313 (D. D.C.

---

[8]Berlin's only defense is a present inability to comply with the July 20, 2006 order. *See United States v. Rylander,* 460 U.S. at 757 ("While Rylander could not attack the enforcement order on the ground that he lacked possession or control of the records at the time the order was issued, he could defend the contempt charge on the ground that he was *then* unable to comply because he lacked possession and control.") (emph. in original); *accord United States v. Lawn Builders of New England, Inc.,* 856 F.2d 388, 395 (1st Cir. 1988). But such a defense certainly would not apply to the eight statements that were redacted, because Berlin has the originals.

1995) (Hogan, J.) (quoting *NLRB v. Blevins Popcorn Co.,* 659 F.2d 1173, 1184 (D.C. Cir. 1981)).

"To prove civil contempt, the Court is required to find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995). "A finding of civil contempt [by the district court] must be supported by clear and convincing evidence." *Id.* at 1321; *accord Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996); *LeShawn A. v. Kelly*, 887 F. Supp. at 313.

However, "willfulness is not an element of civil contempt, so the intent of the party to disobey a court order is 'irrelevant to the validity of [a] contempt finding.'" *Crowley*, 74 F.3d at 720 (citation omitted); *accord Food Lion, Inc. v. United Food and Commercial Workers Intern. Union, AFL-CIO-CLC,* 103 F.3d 1007, 1016 (D.C. Cir. 1997) (The "intent of the recalcitrant party is irrelevant" in a civil contempt proceeding because, unlike a criminal contempt proceeding, a civil contempt action is "a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance.")(citation omitted); *LeShawn A. v. Kelly*, 887 F. Supp. at 313; *see also Burd v. Walters (In re Walters),* 868 F.2d 665, 668 (4th Cir. 1989) ("[S]ince lack of willfulness is not a defense in a proceeding for civil contempt as *McComb* [*v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)] holds, its negation is not a defense to the [contempt] action."); *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) ("[W]illfulness is not a necessary element of civil contempt").

Morever, "good faith is not a defense to civil contempt." *Woods*, 28 F.3d at 399; *see also LeShawn A. v. Kelly,* 887 F. Supp. at 313.[9]

In this case, there is no doubt that a valid order exists, that respondent is aware of that order,[10] and respondent has not complied with that order with respect to producing the summonsed documents. Berlin has not produced unredacted copies of the eight credit card statements from 2002, four other credit card statements for 2002, all credit card statements for 2000-2001, documents reflecting payment of the credit card charges, and the credit card itself. Contempt has therefore been unequivocally established.

III. <u>The United States Seeks Berlin's Incarceration</u>.

The United States seeks Berlin's incarceration until such time as respondent complies with the Court's July 20, 2006 order. *See, e.g., United States v. Sorrells*, 877 F. 2d at 352. Coercive sanctions such as those suggested here "look to the future and are designed to aid the

---

[9]The D.C. Circuit has more recently stated in dictum that the contemnor's "good faith is not entirely irrelevant to the ultimate determination of contempt." *Food Lion*, 103 F.3d at 1017. "Several courts have held that a party charged with contempt may assert a defense of good faith substantial compliance, although at least one district court judge in our jurisdiction has questioned the viability of this defense." *Id.* & n.15 (citing *LaShawn A., supra*). "Assuming that the defense survives in this circuit, however, the burden of proving good faith and substantial compliance is on the party asserting the defense ...." *Id.* (footnote omitted).

But the Court of Appeals also stated that "[i]n order to prove good faith substantial compliance, a party must demonstrate that it took all reasonable steps within its power to comply with the court's order. *** Although a party's good faith may be a factor in determining whether substantial compliance occurred, and may be considered in mitigation of damages good faith alone is not sufficient to excuse contempt." *Id.* at 1017-1018 (citations and internal quotations omitted).

Interestingly, the D.C. Circuit affirmed a finding of civil contempt in *Food Lion*, because the contemnor neither searched nor notified the court of numerous additional boxes to locate the documents he was ordered to produce. *Id*. at 1018-1019.

[10]*See* Durney letters to Flesch which were copied to Berlin, Exs. 2 and 4 to Flesch Decl.

15

plaintiff by bringing a defiant party into compliance with the court order." *Latrobe Steel Co. v. United Steelworkers of America*, 545 F.2d 1336, 1344 (3d Cir. 1976); *see also Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828, 829 (1994); *accord Food Lion*, 103 F.3d at 1016 (civil contempt "'is a remedial sanction used to obtain compliance with court order or to compensate for damage sustained as a result of noncompliance.'") (citation omitted) *United States v. Pratt*, 351 F.3d 131, 140 (4th Cir. 2003) ("A civil contempt sentence aims to 'coerce the defendant to do the thing required,' whereas a sentence for criminal contempt 'operates solely as punishment for the completed act of disobedience.'") (citing, among other cases, *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442-443 (1911); *Hicks v. Feiock*, 485 U.S. 624, 631-633 (1988)); *In re Magwood*, 785 F.2d 1077, 1078 (D.C. Cir. 1986) ("Civil contempt citations must either coerce compliance with a court order or compensate an injured party for losses caused by the violation of a court order."); *LaShawn A., supra*, 887 F. Supp. at 313.

In seeking sanctions, the United States does not seek to punish, but seeks to coerce respondent's compliance with the July 20, 2006 order. The proposed coercive sanctions, *i.e.*, incarceration, have been approved by the Supreme Court. *See McCrone v. United States,* 307 U.S. 61, 63-65 (1939); *United States v. Rylander*, 460 U.S. at 761; *accord Latrobe Steel Co.*, 545 F.2d at 1344 (citing *Shillitani v. United States*, 384 U.S. 364, 368-69 (1966); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)).

As stated by the Supreme Court:

> The paradigmatic coercive, civil contempt sanction ... involves confining a contemnor indefinitely until he complies with an affirmative command such as an order "to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." ***

16

> Under these circumstances, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act [of obeying the court's order], and thus "'carries the keys of his prison in his own pocket." *Gompers*, 221 U.S. at 442 ... quoting *In re Nevitt*, 117 F. 448, 451 (8th Cir. 1902).

*Bagwell*, 512 U.S. at 828 (citations omitted).

Incarceration is necessary in order to coerce compliance with the Court's July 20, 2006 order. *See, e.g., United States v. Teeple,* 286 F.3d at 1051 (affirming contempt citation and order of incarceration in IRS summons case); *United States v. Sorrells*, *supra* (same); *United States v. Lawn Builders of New England, Inc.,* 856 F.2d 388, 395 (1st Cir. 1988) (officer of corporation who failed to produce corporate records sought by IRS summons in violation of enforcement order was ordered to be incarcerated). Incarceration is more likely to result in quick and unqualified compliance with the Court's order. Jail time is therefore the more reasonable and logical coercive contempt sanction that should be imposed. *See also United States v. Rose,* __ F. Supp.2d ___, 2006 WL 1720116 (S.D. Cal. 2006) (contempt and incarceration imposed for disobediance of order enforcing IRS summons).

Alternatively, if the Court is not inclined to incarcerate respondent, then it ought to fine him $1,000 per day until he complies with the July 20, 2006 order. *See United States v. Darwin Construction Co., Inc.*, 873 F.2d 750, 756 (4th Cir. 1989) (District court did not abuse its discretion in assessing a $5,000 per day fine for each day respondent refused to comply with the order enforcing an IRS summons); *United States v. Rue*, 819 F.2d 1488, 1495 (8th Cir. 1987) (No abuse of discretion in court's imposition of daily fine of $100.00 conditioned on respondent's noncompliance with order enforcing IRS summons); *see also United States v.*

17

*Roberts,* 858 F.2d at 700, 702 (affirming order placing respondent in custody *and* requiring him to pay $100.00 daily fine).[11]

## CONCLUSION

Based on the foregoing, the Court should adjudicate respondent in contempt and order respondent incarcerated until such time as he complies with the July 20, 2006 order.

Dated: August 15, 2006

                Respectfully submitted,

                */s/ Charles M. Flesch*
                CHARLES M. FLESCH
                Trial Attorney, Tax Division
                U.S. Department of Justice
                P.O. Box 227
                Ben Franklin Station
                Washington, D.C.  20044
                Telephone:  (202) 307-6635

OF COUNSEL:

KENNETH L. WAINSTEIN
United States Attorney

---

[11] The United States is also entitled to its attorney's fees, costs and expenses incurred in connection with prosecuting this contempt proceeding, and these should be assessed against respondent.  *See United States v. Rue*, 819 F.2d at 1495 (citing *United States v. United Mine Workers*, 330 U.S. 258, 303-304 (1947); *Sizzler Family Steak Houses v. Western Sizzlin Steak House*, 793 F.2d 1529, 1534-35 (11th Cir. 1986)); *see also Food Lion,* 103 F.3d at 1017 n.14 ("[W]e see no reason why a district court should not be authorized to include legal fees specifically associated with the contempt as part of the compensation that may be ordered to make a plaintiff whole, even absent a showing of willful disobediance by the contemnor.").  The amount of the fees, costs and expenses should be determined upon the filing of an affidavit or declaration by petitioner within 30 days from the date that a contempt finding is entered on the Court's docket by the Clerk of the Court.